# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* Joseph Ibanez, *et al.*, | : <br> : Case No.: 1:11 CV 029 <br> : <br> : Judge William O. Bertelsman <br> : |
| vs. | : <br> : |
| Bristol-Myers Squibb Company, *et al.*, | : <br> : |
| Defendants. | : |

## **UNOPPOSED MOTION FOR RULE 54(b) CERTIFICATION**

Pursuant to Fed. R. Civ. P. 54(b), Relators Joseph Ibanez and Jennifer Derrick (now Edwards) respectfully request that the Court amend its Orders of September 24, 2015, and March 27, 2015, to certify the Orders as final judgments, with no just reason for delay of appeal. A Memorandum in Support is attached.

Pursuant to Local Rule 7.3(a), Relator's counsel has consulted with counsel for Bristol-Myers Squibb Company ("BMS"), who have stated that they do not oppose this motion.[1]

Respectfully submitted,

\s\Jennifer M. Verkamp
Jennifer M. Verkamp (0067198)
Frederick M. Morgan, Jr. (0027687)
Morgan Verkamp LLC
35 E. 7th St., Suite 600
Cincinnati, OH 45202
Tel : (513) 651-4400
Fax : (513) 651-4500
Email: jverkamp@morganverkamp.com

---

[1] Because Otsuka is not currently a party to this case, Relators did not seek its position on this motion.

David J. Chizewer
William C. Meyers
Courtney R. Baron
Goldberg Kohn Ltd.
55 E. Monroe, Suite 3300
Chicago, IL 60603
Tel : (312) 201-4000
Fax : (312) 332-2196
Email:  david.chizewer@goldbergkohn.com

*Counsel for Relators*

**MEMORANDUM IN SUPPORT OF MOTION FOR RULE 54(b) CERTIFICATION**

On March 27, 2015, the Court granted Defendants' motions to dismiss as to Relators' *qui tam* allegations and denied BMS' motion as to Relators' employment-based retaliation allegations (Doc. 73). In its Order, the Court found that Relators had sufficiently pled Defendants' fraudulent schemes, but the Court granted Defendants' motions as to those *qui tam* allegations, finding that Relators had not sufficiently alleged under Fed. R. Civ. P. 9(b) that Defendants had caused the submission of false claims.

Relators set out to address the Court's concerns, and on July 24, 2015, Relators filed a Motion for Leave to File Third Amended Complaint Instanter (the "Motion to Amend"), which, in relevant part, included claims-paid data from CMS and the plaintiff states of New York, Massachusetts, and California. On September 24, 2015, the Court denied Relators' Motion, finding that Relators' proposed Third Amended Complaint was futile, as, according to the Court, "information related to claims paid by Medicaid in New York, Massachusetts, and California…information concerning remuneration Otsuka paid to Dr. Jason Kellogg in 2015…[and] Medicare Provider Utilization and Payment Data from CMS" constitute public disclosures under the False Claims Act (Doc. 97).

The Court's September 24 Order left the case in the following procedural posture: Relators' *qui tam* claims against Otsuka America Pharmaceutical, Inc. and BMS are dismissed; and Relators' retaliation claims against BMS are extant. Thus, the combined effect of the Court's March 27 and September 24 Orders is that fewer than all of the claims, rights, and liabilities of fewer than all the parties have been adjudicated, putting this case squarely within the ambit of Federal Rule of Civil Procedure 54(b).

Relators intend to appeal the Court's rulings on the *qui tam* claims. Instead of delaying appeal, Relators respectfully submit that immediate certification of the judgment on those claims pursuant to Fed. R. Civ. P. 54(b) is appropriate, as the Court reached a final resolution of the *qui tam* claims, and there is no just reason to delay Relators' appeal until after a trial on the remaining employment-based retaliation claims. Thus, Relators respectfully request that the Court revise its Orders to include a Rule 54(b) certification, which would allow immediate review of Relators' *qui tam* claims.

Rule 54(b), crafted for precisely the scenario present here, reads as follows:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Rule "is designed to strike a balance between the undesirability of piecemeal appeals, with their attendant delay and duplication of appellate review, and the need to make the appellate process available in multi-claim or multi-party litigation to serve the best interests of the parties." *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 513 (6th Cir. Tenn. 2001)(citations omitted). Rule 54(b) carries with it two independent requirements: that the judgment be final and that there be no just reason for delay.

**The Court's Orders Were Final Judgments**

A judgment is final "where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gen. Acquisition, Inc. v. Gencorp, Inc.*, 23 F.3d 1022, 1026-1027 (6th Cir. 1994). "It must be a

'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.*, internal citations omitted.[2]

Relators seek this language in both Orders because the Order on the Motions to Dismiss and Order on the Motion to Amend work in concert to create the requisite degree of finality on the *qui tam* claims. *See, e.g.*, *Wachovia Bank N.A. v. Tien*, 598 Fed. Appx. 613, 618 (11th Cir. Fla. 2014)(taking a partial final judgment appeal on a 54(b) certification and finding, *inter alia*, that the court did not abuse its discretion when it denied plaintiff's motion to amend). Although the Court's September 24 Order resulted from Relators' Motion to Amend, the Court predicated its denial of Relators' Motion on a finding that it lacked jurisdiction over the case on public disclosure grounds, akin to a finding under Rule 12(b)(1), Fed. R. Civ. P. Thus, if Relators are successful on appeal of the Court's March 27 Order, the Court's September 24 Order, if left to stand, would create a jurisdictional roadblock to the *qui tam* claims proceeding. In short, together, the Court's Orders ended the litigation of the *qui tam* claims and left nothing for the Court to do, vis-à-vis those claims but execute the judgment, creating the degree of finality required by Rule 54(b).

Relators filed a multi-claim/multi-party action: (i) *qui tam* claims brought on behalf of the United States and the states of California, Colorado, Connecticut, Delaware, Florida, Georgia,

---

[2] Relators did not "offer alternative theories in pursuit of one recovery," as the court found in *Gen. Acquisition*. There, the court determined that Rule 54(b) certification was improper because all of the allegations "concern[ed] a single 'aggregate of operative facts.'" *Gen. Acquisition*, 23 F.3d at 1028. Specifically, GenCorp identified a "single wrong," which was Gen. Acquisition targeting GenCorp for a hostile takeover, and "all of GenCorp's rights against [the party] arise from the series of events preceding the attempted hostile takeover. The fact that GenCorp seeks to recover two types of damages— compensation and disgorgement—does not convert a single claim into multiple claims." *Id*. In contrast, here, Relators have alleged two distinct wrongs, which present two paths to two different recoveries. Indeed, if the *qui tam* claims were successful, the recovery would go to the United States and the plaintiff states (regarding which Relators are entitled to a share under the statute). However, if the retaliation claims were successful, the recovery would go to Relators personally, with no recovery to the government plaintiffs.

Illinoi, Hawaii, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Washington, Wisconsin, Massachusetts, Virginia, and the District of Columbia, alleging that Otsuka and BMS engaged in off-label marketing of Abilify and provided kickbacks to physicians in order to induce an increased use in government healthcare programs, in violation of the False Claims Act and the states' equivalents; and (ii) employment-based claims alleging that BMS retaliated against them for their attempts to stop one or more violations of the False Claims Act and Arizona's anti-retaliation law. The Court's Orders collectively and unequivocally operated as a final judgment against Otsuka: the only claims asserted against it—the *qui tam* claims brought on behalf of the United States and the plaintiff states—were dismissed, and the Court dismissed Otsuka from the lawsuit. Similarly, the Court's decisions with respect to the *qui tam* claims asserted against BMS constituted the "ultimate disposition" of those claims. Only the separate, personal, employment-based retaliation claims against BMS remain in the case.

Relators' employment-based retaliation claims against BMS are legally and factually separate from their dismissed *qui tam* off-label marketing and kickback claims against both BMS and Otsuka, and the Court's Orders of March and September worked in concert to effectively end the litigation of the *qui tam* claims, making Rule 54(b) certification of a final judgment proper here.

### **There is No Just Reason for Delay in Appeal**

In its discretion, the Court must determine "whether 'the needs of the parties' outweigh the efficiency of having one appeal at the conclusion of the case in its entirety, and it must spell out its reasons for concluding that prompt review is preferable." *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. Ohio 2004). There is no "precise test" to make this determination, but the Court

should consider "judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980). Neither harsh nor unusual circumstances must be shown to merit the granting of a Rule 54(b) motion; rather, "the proper standard against which a district court's exercise of discretion in granting a Rule 54(b) certification is to be judged is the interest of sound judicial administration." *Id*. at 9. The Sixth Circuit instructs courts to look to the following non-exhaustive list of factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Gen. Acquisition,* 23 F.3d at 1030.

As the Sixth Circuit explained, "[d]epending on the facts of the particular case, all or some of the above factors may bear upon the propriety of…certifying a judgment as final under Rule 54(b)." *Corrosioneering, Inc. v. Thyssen Envtl. Sys.*, 807 F.2d 1279, 1283 (6th Cir. 1986). Here, these factors weigh heavily in favor of certification.

### a. The *qui tam* claims and the retaliation claims are legally and factually dissimilar

The factual bases for the *qui tam* claims and the retaliation claims are not completely unrelated, but they are essentially distinct: the *qui tam* claims are based on allegations that both BMS and Otsuka engaged in off-label marketing of Abilify and thus caused the submission to government healthcare programs of false claims and that both BMS and Otsuka paid incentives to physicians in order to induce them to write more prescriptions for Abilify. The retaliation claims are instead employment-based and rest on Relators' allegations that BMS alone retaliated against

them for complaining about certain of BMS's practices, including its off-label promotion of Abilify.

The legal elements governing the claims are particularly distinct: The *qui tam* claims were brought pursuant to the federal False Claims Act and the equivalent state statutes; while the retaliation claims were brought pursuant to the anti-retaliation section of the federal False Claims Act and in the case of Ms. Edwards, also under Arizona law.[3] In relevant part, liability under the *qui tam* provision of the federal False Claims Act requires a showing that the defendant knowingly presented or caused to be presented a false or fraudulent claim for payment; made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; or knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay the government, or knowingly concealed or knowingly or improperly avoided an obligation to pay the government. 31 U.S.C. § 3729 (a)(1)(A); (B); and (G). In contrast, the liability for retaliating against someone under the False Claims Act is contained in a different part of the statute, and requires a showing that the employee was "discriminated against in the terms and conditions of employment because of lawful acts done by the employee" in furtherance of a False Claims Act suit "or other efforts to stop 1 or more violations" of the False Claims Act. 31 U.S.C. § 3730(h).

A retaliation claim is specifically not dependent on the existence of a successful *qui tam* action. *See, e.g., United States ex rel. McKenzie v. BellSouth Telcomms.*, 123 F.3d 935, 943 (6th Cir. Tenn. 1997)(noting that "[e]ven though we have determined that McKenzie cannot bring a *qui tam* action under the FCA, we must still consider her claim for retaliation," and applying the

---

[3] Arizona Employment Protection Act, Arizona Revised Code § 23-1501.

distinctly different legal standards to conclude that district court's dismissal of *qui tam* claims was proper but dismissal of subsection (h) employment-based retaliation claims was not).

Given the lack of legal and factual interrelatedness between the *qui tam* claims and the retaliation claims, permitting a Rule 54(b) appeal of the *qui tam* claims would not risk piecemeal appeal. At base, the two sets of claims involve some potential discovery overlaps but they are sufficiently factually and legally dissimilar that there is no risk of, for example, the appellate court having to revisit the same facts under a different theory in a second appeal.[4] If the losing party appeals after the retaliation claims proceed to trial, no aspect of the Court's Orders regarding the *qui tam* claims would be reviewed as part of that appeal. Indeed, if the *qui tam* claims were to be appealed prior to the resolution of the retaliation claims, and if there were a later appeal of the retaliation claim, the appellate court simply would not need to decide the same issue more than once.

    **b. The possibility for review of the orders disposing of the *qui tam* claims will not be mooted by future developments in this Court of the retaliation claims**

Because the *qui tam* claims and the retaliation claims are distinct claims, the resolution of one has no effect on the resolution of the other. Review of orders dismissing the *qui tam* claims brought on behalf of the state and federal governments will happen irrespective of the outcome in

---

[4] To illustrate, the discovery on the employment-based retaliation claims includes discovery of the notice Relators provided to BMS regarding actions to stop one or more violations of the FCA, but it would not necessarily include the substance of the *qui tam* allegations themselves (*e.g.*, facts regarding Relators' allegations of BMS's and Otsuka's off-label marketing practices and practices of offering speakerships and other inducements to physicians in order to increase their prescriptions of Abilify). Nevertheless, certain key witnesses, such as Relators themselves, their supervisors at BMS, and BMS compliance personnel may be the subject of discovery of both sets of claims but on different topics. Thus, allowing immediate appeal would not create duplication of discovery but, instead, immediate appeal and the possibility of litigating both sets of claims at the same time creates definite efficiencies.

this Court of the personal claims brought by Relators.[5] Indeed, it is not a question of whether Relators will seek review of the Orders disposing of the *qui tam* claims but simply when they will be permitted to do so.

In *In re Cardinal Health Inc. Sec. Litigs.*, 2007 U.S. Dist. LEXIS 23157 (S.D. Ohio Mar. 29, 2007), Judge Marbley granted the Rule 54(b) motion before him and explained his reasoning as follows:

> If Plaintiffs choose to appeal the dismissal of the claim…[t]his same review would be required whether Plaintiffs appeal this ruling immediately or choose to wait until all claims in this case have been adjudicated… Additionally, any future discovery that may occur in this case will not affect Plaintiffs' appeal, as the Sixth Circuit would judge the sufficiency of Plaintiffs' [dismissed] claim on the facts alleged in the four corners of the complaint that has been dismissed.

Similarly here, there will be no more proceedings in this Court on the dismissed *qui tam* claims, and it is the Court's March and September Orders that will be before the appellate court whether Relators are permitted to appeal now or after a trial on the employment-based retaliation claims. No future developments in this Court of the retaliation claims would or could alter the Court's Orders on the *qui tam* claims or render appellate review of those Orders moot.

    **c. There are no claims or counterclaims that could result in a set-off**

The judgments Relators seek to be made final are not subject to any claims or counterclaims that could result in a set-off: as noted above, any potential *qui tam* recovery would go to the federal and state governments, and any potential recovery for the retaliation claims would go to Relators personally. Thus, there is no risk of confusion on this point.

---

[5] Driving this point home is the fact that Relators could dismiss their personal retaliation claims without permission from the state and federal governments, but they could not do the same with the *qui tam* claims. Pursuant to statute, were the *qui tam* claims reinstated, Relators would need the consent of the government in order to dismiss those claims. 31 U.S.C. § 3730(b)(1).

### d. The interests of the parties and the interest of judicial economy are best served by immediate appeal of the orders disposing of the *qui tam* claims

This motion is unopposed[6] and filed contemporaneously with a joint motion to stay Relators' retaliation claims, should the Court grant this Rule 54(b) motion. There are very practical reasons why separating the two sets of claims and allowing one to proceed to appeal sooner is more efficient, and chief among them are delay and expense. Specifically, if Relators must wait until resolution of the retaliation claims in order to proceed with an appeal of the *qui tam* claims, the resolution of that appeal would likely be at least two or three years away. If it were successful, Relators would be back in this Court years hence, at the beginning stages of litigating a multi-million-dollar, nationwide case that is already four years old. With each passing year, evidence grows staler, and expenses for all sides grow larger.[7] Whereas, if the Court grants the instant motion and corresponding motion for a stay and certifies its Orders as final and appealable as to the *qui tam* claims, and if the Sixth Circuit reverses the Court and reinstates the *qui tam* claims, the Court will only have to manage one schedule and conduct one trial. Otherwise, the Court would need to contend with one schedule and one trial against BMS, and then a second schedule and second trial against BMS and Otsuka. Under similar circumstances, Judge Marbley determined that a "duplicative trial in a case of this magnitude would be a colossal waste of judicial resources." *In re Cardinal Health Inc. Sec. Litigs.*, 2007 U.S. Dist. LEXIS, *23.

Given the lack of interrelatedness of the two sets of claims; the absence of risk of future developments in the retaliation case mooting the possibility of review of the *qui tam* case; the

---

[6] Which should ameliorate any concerns that the parties might first have to expend resources in a jurisdictional dispute at the appellate court.

[7] Because Otsuka is currently dismissed from the case but must await the resolution of the retaliation claims before it comes before the appellate court, its interest in finality is served by a sooner appeal of the *qui tam* claims. If the Sixth Circuit reinstates it as a defendant in the case, far better to know that sooner rather than have that potential liability looming over it for years in a kind of limbo.

absence of counterclaims or other offset issues; and the interests of economy and efficiency, Relators submit that there can be no just reason for delay in appealing the Court's March 27 and September 24 Orders dispensing with the *qui tam* claims. *See, e.g., United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 2013 U.S. Dist. LEXIS 91137 (June 27, 2013)(finding no just reason for delay and granting a Rule 54(b) motion filed by BMS where the *qui tam* claims involving off-label marketing of certain drugs had been dismissed but the retaliation claims survived).

**Conclusion**

As discussed above, the Court's March 27 and September 24 Orders worked together to end the litigation of the *qui tam* claims Relators brought on behalf of the United States and twenty-seven states, and the remaining employment-based claims are separate legally and factually from the *qui tam* claims, with economy and efficiency favoring earlier resolution of the appeal of the Orders dispensing with the *qui tam* claims. Relators, through this unopposed motion, thus respectfully request that the Court amend its March 27 and September 24 Orders to make them final and appealable as to the dismissed *qui tam* claims, pursuant to Fed. R. Civ. P. 54(b).

Respectfully submitted,

/s/ Jennifer M. Verkamp
Jennifer M. Verkamp (0067198)
Frederick M. Morgan, Jr. (0027687)
Morgan Verkamp LLC
35 E. 7th St., Suite 600
Cincinnati, OH 45202
Tel : (513) 651-4400
Fax : (513) 651-4500
Email: jverkamp@morganverkamp.com

David J. Chizewer
William C. Meyers
Courtney R. Baron
Goldberg Kohn Ltd.
55 E. Monroe, Suite 3300
Chicago, IL 60603
Tel : (312) 201-4000
Fax : (312) 332-2196
Email:  david.chizewer@goldbergkohn.com

*Counsel for Relators*

## **CERTIFICATE OF SERVICE**

I certify that on this 13th day of January, 2016, a copy of the foregoing was served on all counsel of record through the United States District Court for the Southern District of Ohio's electronic filing system.

    /s/ Jennifer M. Verkamp
Jennifer M. Verkamp, Esq.